PEOPLE v UPHAUS

Docket No. 267238. Submitted March 13, 2007, at Lansing. Decided April
3, 2007, at 9:10 a.m. Leave to appeal sought.

Gary S. Uphaus was convicted by a jury in the Livingston Circuit Court,
David J. Reader, J., of one count of delivering marijuana, one count of
possessing with intent to deliver marijuana, and four counts of
possessing a firearm while committing a felony. The court vacated
three of the felony-firearm convictions and sentenced the defendant
to two years of imprisonment for the felony-firearm conviction
followed by concurrent terms of four to eight years of imprisonment
for the marijuana convictions. The court relied on facts that were not
proven to the jury beyond a reasonable doubt when computing the
defendant's prior record variables and offense variables to ascertain
the minimum sentence range under the sentencing guidelines, and in
justifying its departure from the intermediate sanction of nonimpris-
onment or confinement in jail for a period not exceeding 12 months,
as provided under MCL 769.34(4)(a) whenever, as in the defendant's
case, the upper limit of the recommended sentence range is 18
months or less. The defendant appealed, claiming that his Sixth
Amendment right to a jury trial was violated when the court in the
course of sentencing considered facts not proven to the jury beyond a
reasonable doubt. The prosecution cross-appealed, claiming that the
trial court erred in vacating three felony-firearm convictions because
the Legislature intended punishment for each firearm possessed
during the commission of a felony.

The Court of Appeals *held*:

1. Under the Sixth Amendment, other than the fact of a prior
conviction, any fact that increases the penalty for a crime beyond
the prescribed statutory maximum must be submitted to a jury
and proven beyond a reasonable doubt. The relevant maximum
sentence at the time the trial court calculated the defendant's
sentencing variables was the eight-year maximum provided by
MCL 333.7401(2)(d)(iii) and MCL 333.7413(2). Because the defen-
dant was not entitled to the benefit of the limitations imposed by
MCL 769.34(4)(a) until after the trial court calculated and applied
his sentencing variables, the trial court's use of its factual findings
when scoring the sentencing variables did not result in the imposition

of a sentence in excess of the relevant maximum sentence. The trial court properly considered facts not proven to the jury in determining whether the defendant qualified for an intermediate sanction under MCL 769.34(4)(a). However, once MCL 769.34(4)(a) applied and provided the relevant maximum, the trial court could not use its factual findings to justify an upward departure from the limitations imposed by MCL 769.34(4)(a) without violating the defendant's Sixth Amendment rights. An upward departure from the intermediate sanction provided by MCL 769.34(4)(a) must be supported by a substantial and compelling reason based on facts proven to a jury beyond a reasonable doubt.

2. In determining whether the Legislature intended to permit multiple convictions for the same conduct under a single statute, the "unit of prosecution" test is used as an aid. The correct unit of prosecution is determined by analyzing the statute at issue to determine its primary purpose. The language of MCL 750.227b, the felony-firearm statute, indicates that the Legislature was more concerned with the underlying felonious conduct, which was rendered more dangerous by the presence of a firearm, than with the number of firearms involved. The appropriate unit of prosecution is the felonious conduct, here possession with intent to deliver marijuana, rather that the number of firearms possessed. The trial court correctly determined that the defendant could properly be convicted of only one count of felony-firearm based on the single predicate felony of possession with intent to deliver marijuana.

Convictions affirmed, sentences vacated, and case remanded for resentencing.

1. SENTENCES — SENTENCING GUIDELINES — INTERMEDIATE SANCTIONS — RIGHT TO JURY TRIAL.

A sentencing court may consider facts not proven to a jury beyond a reasonable doubt when scoring a defendant's sentencing variables to determine if a defendant qualifies for an intermediate sanction of probation or confinement in jail for a period not exceeding 12 months; however, the sentencing court may depart upwardly from the intermediate sanction only on the basis of a substantial and compelling reason based on facts proven to a jury beyond a reasonable doubt (MCL 769.34[4][a]).

2. WEAPONS — POSSESSION OF A FIREARM DURING THE COMMISSION OF A FELONY — DOUBLE JEOPARDY.

A defendant may be convicted of only one count of possession of a firearm during the commission of one underlying felony regardless of the number of firearms involved (MCL 750.2776).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *David L. Morse*, Prosecuting Attorney, and *William J. Vaillencourt*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Douglas W. Baker*) and Gary Uphaus *in propria persona*.

Before: SMOLENSKI, P.J., and SAAD and WILDER, JJ.

SMOLENSKI, P.J. Defendant appeals as of right from his convictions by a jury of one count of delivery of marijuana, MCL 333.7401(2)(d)(iii), one count of possession with the intent to deliver marijuana, MCL 333.7401(2)(d)(iii), and four counts of carrying or possessing a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to concurrent terms of four to eight years in prison for the conviction of delivery of marijuana and the conviction of possession with the intent to deliver marijuana. The trial court also vacated three of defendant's felony-firearm convictions and sentenced defendant to serve two years in prison consecutively to and preceding the sentences for the marijuana convictions for the remaining felony-firearm conviction. We affirm defendant's convictions, but vacate defendant's sentences, and remand for resentencing consistent with this opinion.

## I. CONSTITUTIONALITY OF DEFENDANT'S SENTENCING

In his Standard 4 brief,[1] defendant first argues that the trial court sentenced him in violation of the Sixth Amendment of the United States Constitution when, in

---

[1] See Administrative Order No. 2004-6, 471 Mich c, cii (permitting a defendant to file a brief *in propria persona*).

determining his sentences, it relied on facts not proven to a jury beyond a reasonable doubt. Specifically, defendant contends that the trial court could not use judicially determined facts to increase either the upper limit of the minimum sentence range under the guidelines or to depart from the guidelines. For this reason, defendant further argues, he is entitled to be resentenced. We hold that, once a trial court determines that a defendant's minimum sentence recommendation entitles the defendant to the benefit of an intermediate sanction under MCL 769.34(4)(a), the trial court may not depart from the sentencing requirements of MCL 769.34(4)(a) on the basis of facts not proven to a jury beyond a reasonable doubt.

### A. STANDARD OF REVIEW

Whether defendant's sentencing violated the Sixth Amendment of the United States Constitution is a question of law that this Court reviews de novo. *People v Drohan*, 475 Mich 140, 146; 715 NW2d 778 (2006). This issue also involves statutory interpretation. The proper interpretation of a statute is a question of law that this Court reviews de novo. *People v Babcock*, 469 Mich 247, 253; 666 NW2d 231 (2003). However, because this issue is unpreserved, we shall review it for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

### B. DEFENDANT'S SENTENCING FOR THE MARIJUANA OFFENSES

Under Michigan's sentencing scheme, a defendant will typically be given an indeterminate sentence.[2] See

---

[2] Some crimes, such as felony-firearm, require imposition of a determinate sentence. See MCL 750.227b(1) (imposing a mandatory two-year sentence).

MCL 769.8; *Drohan, supra* at 161. The maximum sentence under this system is set by law. See MCL 769.8(1) ("The maximum penalty provided by law shall be the maximum sentence in all cases except as provided in this chapter and shall be stated by the judge in imposing the sentence."). Thus, defendant's maximum sentence for each of the marijuana offenses would normally be the four-year maximum provided by MCL 333.7401(2)(d)(iii). However, the marijuana offenses at issue were second or subsequent offenses and, as a result, the trial court doubled the applicable maximum sentences. See MCL 333.7413(2). Therefore, defendant's maximum sentence for the marijuana offenses was eight years.[3]

Because defendant committed certain enumerated felonies on or after January 1, 1999,[4] the trial court was obligated to apply the sentencing guidelines, MCL 777.1 *et seq.*, to determine defendant's minimum sentence. MCL 769.34(2) ("Except as otherwise provided . . . the minimum sentence imposed by a court of this state for a felony enumerated in [the sentencing guidelines] . . . shall be within the appropriate sentence range under the version of those sentencing guidelines in effect on the date the crime was committed."); *Babcock, supra* at 255 n 6. In order to determine the recommended minimum sentence range for a particular offense under the sentencing guidelines, the trial court had to first score defendant's prior record variables (PRVs) and offense variables (OVs) for the offenses. MCL 777.21(1)(a) and (b). Those variables then had to be applied to the applicable sentencing grid to derive a

---

[3] Defendant does not contest the trial court's application of MCL 333.7413(2) to double the applicable maximum term of imprisonment.

[4] See MCL 777.13m (listing MCL 333.7401[2][d][iii] as an enumerated felony).

minimum sentence range. MCL 777.21(1)(c). The trial court was then required to select the minimum sentence from within this range or state a "substantial and compelling" reason for departing from the range. MCL 769.34(3); *Babcock, supra* at 255-256.

In the present case, the trial court calculated a total PRV score of 20 on the basis of defendant's criminal history. In addition, the trial court scored OV 1 at five points on the basis of a detective's trial testimony that defendant threatened to put a bullet in the detective's head. See MCL 777.31(1)(e) (scoring OV 1 at five where a "weapon was displayed or implied"). On the basis of these totals, the trial court calculated the recommended minimum sentence range at zero to nine months' imprisonment for each marijuana offense. See MCL 777.67. Because the upper limit of the recommended minimum sentence range was 18 months or less, defendant qualified for an intermediate sanction under MCL 769.34(4)(a).[5] An intermediate sanction may include "probation or any sanction, other than imprisonment in a state prison or state reformatory," MCL 769.31(b), but may also "include a jail term that does not exceed the upper limit of the recommended minimum sentence range or 12 months, whichever is less," MCL 769.34(4)(a). However, a trial court may choose not to sentence a defendant to an intermediate sanction if "the court states on the record a substantial and compelling reason to sentence the individual to the jurisdiction of the department of corrections." MCL

---

[5] Although the trial court could have doubled defendant's minimum sentence under MCL 333.7413(2), see *People v Williams*, 268 Mich App 416, 424-431; 707 NW2d 624 (2005), it did not state that it was doing so. In any event, even if defendant's minimum sentence range were doubled, the upper limit of his minimum sentence would have been 18 months. Therefore, he would still be entitled to an intermediate sanction under MCL 769.34(4)(a).

769.34(4)(a). Thus, under MCL 769.31(b) and MCL 769.34(4)(a), the trial court could, at most, sentence defendant to a maximum of nine months in jail for each of the marijuana offenses unless it stated a "substantial and compelling reason to sentence the individual to the jurisdiction of the department of corrections." At sentencing, the trial court elected to depart on the basis of its conclusion that defendant was a serious threat to society and particularly to the police officers involved in his case and prior cases. For this reason, the trial court sentenced defendant to a minimum of four years and a maximum of eight years in prison.

From the preceding, it is clear that the trial court relied on facts that were not proven beyond a reasonable doubt to a jury at two distinct points in the sentencing process. First, the trial court made factual determinations in computing the PRV and OV totals necessary to ascertain the minimum recommended sentence range. Next, the trial court made factual determinations in order to justify its departure from the sentencing requirements imposed by MCL 769.34(4)(a). We shall consider the propriety of each in turn.

### C. SENTENCING AND THE SIXTH AMENDMENT RIGHT TO TRIAL BY JURY

Under the Sixth Amendment of the United States Constitution, a criminal defendant is guaranteed the "right to a speedy and public trial, by an impartial jury." The Sixth Amendment right to a jury trial, considered together with the "due process" clause of the Fourteenth Amendment, entitles "a criminal defendant to 'a jury determination that [he] is guilty of every element of the crime with which he is charged beyond a reasonable doubt.' " *Apprendi v New Jersey*, 530 US 466, 477; 120 S Ct 2348; 147 L Ed 2d 435 (2000), quoting *United*

*States v Gaudin*, 515 US 506, 510; 115 S Ct 2310; 132 L Ed 2d 444 (1995). Because a criminal defendant is entitled to have a jury decide his or her guilt, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. "Thus, any fact that 'expose[s] the defendant to a greater punishment than that authorized by the jury's guilty verdict[,]' . . . is an element of the crime that must be proven beyond a reasonable doubt." *Drohan, supra* at 150, quoting *Apprendi, supra* at 494.

Although the Sixth Amendment prevents a judge from using facts not found by a jury to increase a sentence beyond the maximum authorized by a jury verdict, once a jury has found all the necessary elements of the crime beyond a reasonable doubt, the government is authorized to impose any sentence below the maximum. *Harris v United States*, 536 US 545, 565; 122 S Ct 2406; 153 L Ed 2d 524 (2002). "That is why, as *Apprendi* noted, 'nothing in this history suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment *within the range.*' " *Id.*, quoting *Apprendi, supra* at 481. Indeed, judges may properly "find facts that give rise to a mandatory minimum sentence below 'the maximum penalty for the crime committed.' " *Id.*, quoting *McMillan v Pennsylvania*, 477 US 79, 87-88; 106 S Ct 2411; 91 L Ed 2d 67 (1986). Hence, the constitutionality of a particular sentencing scheme will depend on whether the scheme permits a trial court to impose a sentence beyond the relevant statutory maximum.

In *Blakely v Washington*, 542 US 296; 124 S Ct 2531; 159 L Ed 2d 403 (2004), the Court addressed what

constitutes the relevant statutory maximum for purposes of sentencing within the limits imposed by the Sixth Amendment. In *Blakely*, the defendant pleaded guilty of second-degree kidnapping, which was classified by statute as a class B felony subject to a maximum term of imprisonment of ten years. *Id.* at 299. Although a class B felony was potentially subject to a term of imprisonment of ten years, under Washington's sentencing scheme the trial court was required to sentence the defendant to a term of imprisonment within the standard range of 49 to 53 months unless it found substantial and compelling reasons for departing upward. *Id.* At sentencing, the trial court determined that the defendant had acted with deliberate cruelty and, for that reason, the trial court elected to impose a sentence that was 37 months higher than the upper limit of the standard range under Washington's sentencing scheme. The United States Supreme Court held that the trial court's decision to exceed the standard range on the basis of facts not found by the jury violated the defendant's Sixth Amendment right to a jury trial. The Court clarified that "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." *Id.* at 303-304. Because the trial court was required to sentence the defendant within the standard range, the upper limit of that range was the maximum for purposes of the limits imposed by *Apprendi*. *Id.* at 304.

In *Drohan*, *supra*, our Supreme Court examined the effect of *Blakely* on Michigan's sentencing scheme. The Court first noted that "a defendant does not have a right to anything less than the maximum sentence authorized by the jury's verdict, and, therefore, judges may make certain factual findings to select a specific minimum sentence from within a defined range." *Dro-*

*han, supra* at 159, citing *Blakely, supra* at 308-309. The Court next examined what constituted the relevant statutory maximum under Michigan's sentencing scheme and concluded that the relevant maximum is the statutory maximum sentence. *Id.* at 164, citing MCL 768.8(1).

> [I]n all but a few cases, a sentence imposed in Michigan is an indeterminate sentence. The maximum sentence is not determined by the trial court, but rather is set by law. Michigan's sentencing guidelines, unlike the Washington guidelines at issue in *Blakely,* create a range within which the trial court must set the minimum sentence. However, a Michigan trial court may not impose a sentence greater than the statutory maximum. While a trial court may depart from the minimum guideline range on the basis of "substantial and compelling reason[s]," MCL 769.34(3); *Babcock, supra* at 256-258, such departures, with one exception, are limited by statute to a minimum sentence that does not exceed "2/3 of the statutory maximum sentence." MCL 769.34(2)(b). Thus, the trial court's power to impose a sentence is always derived from the jury's verdict, because the "maximum-minimum" sentence will always fall within the range authorized by the jury's verdict. [*Drohan, supra* at 161-162.]

Hence, under Michigan's sentencing scheme, a trial court may consider facts not found by a jury in calculating the applicable minimum sentence range without offending the limitations imposed by the Sixth Amendment. Further, this remains true even when there is a possibility that a defendant might be entitled to the benefits of an intermediate sanction under MCL 769.34(4)(a).

Under MCL 769.34(4)(a),

> [i]f the upper limit of the recommended minimum sentence range for a defendant determined under the sentencing guidelines set forth in chapter XVII [MCL 777.1 *et seq.*] is 18 months or less, the court shall impose an intermediate

sanction unless the court states on the record a substantial and compelling reason to sentence the individual to the jurisdiction of the department of corrections. An intermediate sanction may include a jail term that does not exceed the upper limit of the recommended minimum sentence range or 12 months, whichever is less.

Unlike the sentencing scheme at issue in *Blakely*, MCL 769.34(4)(a) does not necessarily establish a new maximum. Instead, the limits imposed by MCL 769.34(4)(a) are contingent on the calculation of a defendant's sentencing variables and the application of those variables to the sentencing grid. Thus, the relevant maximum sentence at the time the trial court calculated defendant's sentencing variables was the eight-year maximum provided by MCL 333.7401(2)(d)(iii) and MCL 333.7413(2). Because defendant was not entitled to the benefit of the limitations imposed by MCL 769.34(4)(a) until after the trial court calculated and applied his sentencing variables, the trial court's use of its factual findings did not result in the imposition of a sentence in excess of the relevant maximum. Indeed, the factual findings actually resulted in the imposition of a new, lower maximum sentence. This conclusion is also consistent with our Supreme Court's decision in *People v McCuller*, 475 Mich 176; 715 NW2d 798 (2006) (*McCuller I*), vacated by *McCuller v Michigan*, ___ US ___; 127 S Ct 1247; 167 L Ed 2d 62 (2007) (*McCuller II*).

In *McCuller I*, our Supreme Court addressed whether the defendant's Sixth Amendment rights were violated when the trial court used facts not found by a jury to calculate the defendant's OVs. The defendant argued that, because the calculation of the PRVs alone would have entitled him to imposition of an intermediate sanction under MCL 769.34(4)(a), the trial court could not use facts not found by the jury to calculate his OVs

and, thereby, disqualify him from the benefit of an intermediate sanction. *Id.* at 179. Our Supreme Court disagreed.

> [U]nder MCL 769.34(4)(a), a defendant is not legally *entitled* to an intermediate sanction until *after* the OVs have been scored and those OVs, in conjunction with the PRVs and the offense class, indicate that the upper limit of the defendant's guidelines range is 18 months or less. In other words, a defendant's legal right to an intermediate sanction arises from properly scored guidelines, including the scoring of the OVs. A sentencing court does not violate *Blakely* and its progeny by engaging in judicial fact-finding to score the OVs to calculate the minimum recommended sentencing guidelines range, even when the defendant's PRV score alone would have placed the defendant in an intermediate sanction cell. [*Id.* at 182.]

Hence, the trial court could properly consider facts not found by a jury in determining whether defendant qualified for an intermediate sanction under MCL 769.34(4)(a). Furthermore, we do not believe this result is altered by the ultimate disposition of *McCuller I*, which was vacated by the United States Supreme Court and remanded for consideration in light of *Cunningham v California*, 549 US ___; 127 S Ct 856; 166 L Ed 2d 856 (2007). See *McCuller II, supra*.

In *Cunningham*, the United States Supreme Court considered whether California's determinate sentencing scheme violates a defendant's right to trial by jury as safeguarded by the Sixth and Fourteenth amendments. *Id.* at 127 S Ct 857. Under California's determinate system, the "statute defining the offense prescribes three precise terms of imprisonment—a lower, middle, and upper term sentence." *Id.* at 127 S Ct 861. Although the statute defining the crime prescribes three terms of imprisonment, another statute requires the trial court to impose the middle sentence unless the

trial court finds that there were circumstances in aggravation or mitigation of the crime. *Id.* "An element of the charged offense, essential to a jury's determination of guilt, or admitted in a defendant's guilty plea, does not qualify as such a circumstance. Instead, aggravating circumstances depend on facts found discretely and solely by the judge." *Id.* at 127 S Ct 868 (citations omitted). On the basis of this scheme, the Court determined that the middle term was the relevant statutory maximum for purposes of *Blakely. Id.* "Because circumstances in aggravation are found by the judge, not the jury, and need only be established by a preponderance of the evidence, not beyond a reasonable doubt," the Court concluded that California's sentencing scheme violated *Apprendi*'s "bright-line rule: Except for a prior conviction, 'any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' " *Id.* at 127 S Ct 868, quoting *Apprendi*, *supra* at 490.

The system at issue in *Cunningham* is distinguishable from Michigan's sentencing scheme. As already noted, the maximum sentence under Michigan's sentencing scheme is the maximum sentence provided under the statute that defines the offense, "except as provided in this chapter." MCL 769.8. Thus, the maximum sentence provided in the statute proscribing the offense is the maximum sentence authorized by the jury's verdict unless and until another statutory provision applies. As will be discussed below, we conclude that MCL 769.34(4)(a) establishes a new maximum sentence *when it applies*. However, because the application of MCL 769.34(4)(a) is contingent, it is not the relevant statutory maximum until the contingency is satisfied. As such, a trial court may properly consider facts not found by the jury in determining whether a

particular defendant is entitled to the benefits conferred by MCL 769.34(4)(a). Therefore, the trial court did not plainly err when it calculated defendant's OVs on the basis of facts not proven to a jury beyond a reasonable doubt. Further, even if we were to conclude that the trial court had violated defendant's Sixth Amendment rights by calculating his OVs using facts not proven beyond a reasonable doubt to the jury, defendant would not be entitled to any relief for this violation. Defendant's total OV score was five, which placed him in the same offense variable level that he would have had if the trial court had not scored his OVs at all. See MCL 777.67. Consequently, the trial court's calculation of OV 1 could not have affected defendant's substantial rights. *Carines, supra* at 763.

However, once a trial court determines that MCL 769.34(4)(a) properly applies to a particular defendant's sentencing, under the plain terms of that statute, the trial court must sentence the defendant to an intermediate sanction. Because MCL 769.34(4)(a) is mandatory and places specific limits on the trial court's ability to sentence the defendant, once it applies MCL 769.34(4)(a) becomes the relevant maximum. *Blakely, supra* at 303-304. As such, a trial court may not use judicial findings to justify an upward departure from the limitations imposed by MCL 769.34(4)(a) without violating the defendant's Sixth Amendment rights.

Although MCL 769.34(4)(a) requires a trial court to sentence a qualifying defendant to an intermediate sanction, it also permits a trial court to impose a prison sentence if the court states "on the record a substantial and compelling reason to sentence the individual to the jurisdiction of the department of corrections." Other than the "substantial and compelling" requirements, there are no statutory limits on the factual basis for the

trial court's reason for departing. Hence, a trial court could elect to depart on the basis of facts not proven to a jury beyond a reasonable doubt in contravention of a defendant's Sixth Amendment right to a jury trial. However, because this Court is obligated to construe statutes "in such a manner as to render them constitutional," *People v Hayes*, 421 Mich 271, 284; 364 NW2d 635 (1984), we construe MCL 769.34(4)(a) to permit a trial court to sentence a defendant, who otherwise qualifies for an intermediate sanction under MCL 769.34(4)(a), to a term of imprisonment only when the court states a "substantial and compelling" reason for the departure that is based on facts proven to a jury beyond a reasonable doubt or based on prior convictions. *Apprendi, supra* at 490. Construed in this way, the discretionary departure provision of MCL 769.34(4)(a) meets the constitutional requirements of the Sixth Amendment.

As already noted, defendant's recommended minimum sentence range was zero to nine months' imprisonment. Therefore, defendant qualified for the benefit of an intermediate sanction under MCL 769.34(4)(a). However, the trial court elected to exercise its discretion to depart from the limitations imposed by MCL 769.34(4)(a) and sentenced defendant to four to eight years in prison for both marijuana offenses. Consequently, the maximum sentence that defendant might serve was increased from nine months in jail to 96 months in prison. In support of this departure, the trial court found that defendant was a serious threat to society and "particularly to the police officers who have been involved in this case and other cases." Because these reasons are founded on facts not proved beyond a reasonable doubt to a jury, it was plain error for the trial court to depart from the sentencing requirements imposed by MCL 769.34(4)(a) on that basis. *Carines, supra*

at 763. Further, because the plain error resulted in defendant's receiving a substantially greater sentence, the plain error affected defendant's substantial rights. Consequently, we must vacate defendant's sentences.

### D. CONCLUSION

For the reasons stated above, we vacate defendant's sentences and remand for resentencing. During resentencing the trial court shall sentence defendant to an intermediate sanction unless it states a substantial and compelling reason that comports with the requirements of *Apprendi* and its progeny. Because of our resolution of this issue, we decline to address defendant's remaining claims of error concerning his sentencing proceeding.[6] However, if he so chooses, defendant may raise those issues again before the trial court at resentencing.

### II. FELONY-FIREARM CONVICTIONS

On cross-appeal, the prosecutor argues that the trial court erred when it vacated three of defendant's four felony-firearm convictions. Specifically, the prosecutor

---

[6] Defendant also claims that his trial counsel was ineffective for failing to interview and call five witnesses present when the police detained defendant and searched his home. These witnesses, defendant argues, could have testified that defendant did not threaten the officers conducting the search. Defendant cannot prove that the outcome of his trial was affected by the failure to call these witnesses. See *People v Toma*, 462 Mich 281, 302-303; 613 NW2d 694 (2000). Instead, the most defendant can demonstrate is that the trial court may have improperly relied on the purported threats in determining to depart from the intermediate sanction. Because defendant would not be entitled to a new trial on the basis of this claim of error, and because we have already determined that defendant is entitled to resentencing, we decline to address this issue. Furthermore, because defendant's claim of ineffective assistance of appellate counsel is based on his appellate counsel's failure to raise the claim of ineffective assistance of trial counsel, we decline to address that claim as well.

argues that the plain language of MCL 750.227b indicates the Legislature's intent to punish a defendant for each firearm that he or she carries or possesses during the commission of a felony.[7] We disagree.

The proper interpretation of a statute is a question of law that this Court reviews de novo. *Babcock, supra* at 253. In addition, whether a conviction is barred by the double jeopardy clauses of the federal and state constitutions is a question of law that this Court reviews de novo. *People v Calloway*, 469 Mich 448, 450; 671 NW2d 733 (2003).

The double jeopardy clauses[8] of the federal and state constitutions protect a defendant against both multiple prosecutions for the same offense, as well as multiple punishments for the same offense. *Id.* What constitutes the same offense for purposes of the double jeopardy clauses is a matter of legislative intent. *Id.* at 450-451. This Court utilizes the so-called "unit of prosecution" test as an aid in determining whether the Legislature intended to permit multiple convictions for the same conduct under a single statute. *People v Wakeford*, 418 Mich 95, 107; 341 NW2d 68 (1983). The correct "unit of prosecution" is determined by analyzing the statute at issue to determine its primary purpose. *Id.* at 111.

MCL 750.227b provides in relevant part:

(1) A person who carries or has in his or her possession a firearm when he or she commits or attempts to commit a felony, except a violation of section 223, section 227, 227a or 230, is guilty of a felony, and shall be imprisoned for 2 years. Upon a second conviction under this section, the

---

[7] Although defendant was convicted of two felonies other than his felony-firearm convictions, the possession of marijuana with intent to deliver charge was the sole predicate felony for each of the four felony-firearm charges at issue.

[8] US Const, Am V; Const 1963, art 1, § 15.

person shall be imprisoned for 5 years. Upon a third or subsequent conviction under this subsection, the person shall be imprisoned for 10 years.[9]

(2) A term of imprisonment prescribed by this section is in addition to the sentence imposed for the conviction of the felony or attempt to commit the felony, and shall be served consecutively with and preceding any term of imprisonment imposed for the felony or attempt to commit the felony.

Although the statute does not particularly emphasize either the element of carrying or possession of a firearm or the element of commission or attempted commission of a felony, we find it noteworthy that the statute criminalizes the carrying or possession of a firearm, even if the possession would otherwise be lawful, during the commission or attempted commission of a felony. That is to say, carrying or possessing a firearm is never lawful when done during the commission or attempted commission of a felony. Hence, the focus of the statute is on the underlying felonious conduct, which renders the carrying or possession of a firearm unlawful. Further, the statute specifically states that the term of imprisonment "is in addition to the sentence imposed for the conviction of *the felony* or attempt to commit *the felony*," and requires the defendant to serve the sentence "consecutively with and preceding any term of imprisonment imposed for *the felony* or attempt to commit *the felony*." MCL 750.227b(2) (emphasis added).

---

[9] We must reject the prosecution's argument that the Legislature's use of the indefinite article "a" before the term "firearm" clearly indicates that the Legislature intended to punish a defendant for each firearm carried or possessed during the commission or attempted commission of a felony. The Legislature has specifically stated that, for purposes of interpreting the Michigan Penal Code, the "singular number includes the plural and the plural includes the singular." MCL 750.10. For this reason, the use of the indefinite article provides little guidance concerning the Legislature's intent on this issue.

By emphasizing that the punishment for a violation of MCL 750.227b is in addition to the punishment for the underlying felony and requiring that the sentence for the felony-firearm conviction be served consecutively to and preceding the sentence for the underlying felony, the Legislature indicated that it was more concerned with the underlying felonious conduct, which was rendered more dangerous by the presence of a firearm, than with the number of firearms involved. This understanding of MCL 750.227b is further bolstered by our Supreme Court's decision in *People v Morton*, 423 Mich 650; 377 NW2d 798 (1985).

In *Morton*, the defendant challenged his conviction of two counts of felony-firearm based on the commission of two separate felonies with the same gun during a single transaction. *Id.* at 651-652. Our Supreme Court concluded that double jeopardy did not bar defendant's convictions even though he used only one gun. The Court explained:

> We believe it clear that the Legislature intended, with only a few narrow exceptions, that every felony committed by a person possessing a firearm result in a felony-firearm conviction. Where, as here, the defendant is convicted of separate assaults, we perceive no reason why he may not also be convicted of separate counts of felony-firearm. [*Id.* at 656.]

Therefore, we conclude that the appropriate "unit of prosecution" is the felonious conduct rather than the number of firearms carried or possessed. Consequently, the trial court did not err when it concluded that defendant could properly be convicted of only one felony-firearm count based on the single predicate felony of possession with the intent to deliver marijuana.

We affirm defendant's convictions, but vacate defendant's sentences. We remand for resentencing consistent with this opinion. We do not retain jurisdiction.