*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ANTHONY MICHAEL MCCLAIN,

Defendant-Appellant.

UNPUBLISHED
January 17, 2025
10:25 AM

No. 366998
Oakland Circuit Court
LC No. 2020-274524-FC

Before: RIORDAN, PJ., and O'BRIEN and GARRETT, JJ.

PER CURIAM.

Defendant, Anthony Michael McClain, asks us to consider three facial challenges to the criminal statutes for felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), on constitutional grounds. We conclude that McClain has not established grounds to vacate his convictions and, therefore, we affirm.

## I. BACKGROUND

This case arose out of a shooting that occurred on April 6, 2020, at an apartment complex in the city of Oak Park. McClain objected to loud music coming from another apartment and an argument ensued among the tenants. McClain ultimately shot the victim, Shakyra Hinton, who died from her injuries. A jury convicted McClain of felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced McClain, as a fourth-offense habitual offender, MCL 769.12, to serve prison terms of 2 to 50 years for the felon-in-possession conviction, and a consecutive term of two years' imprisonment for the felony-firearm conviction. The prosecutor also charged McClain with open murder, MCL 750.316, and another count of felony-firearm, but the jury deadlocked on those charges, the trial court declared a mistrial, and McClain later pleaded guilty to second-degree murder, MCL 750.317, and felony-firearm. The trial court sentenced McClain to 18 to 50 years' imprisonment for the murder conviction, and a consecutive term of two years' imprisonment for the associated felony-firearm conviction.

On appeal, McClain argues, for the first time, that his sentences for violating the felony-firearm statute, his felon-in-possession conviction, and his convictions of both felony-firearm and felon-in-possession violated his constitutional rights.

## II. STANDARD OF REVIEW

We review these unpreserved constitutional claims for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Under the plain-error rule, the defendant "bears the burden to prove: (1) an error occurred; (2) the error was plain, i.e., clear or obvious; and (3) the plain error affected his substantial rights, meaning it affected the outcome of the proceedings." *People v Jarrell*, 344 Mich App 464, 482; 1 NW3d 359 (2022). Reversal is therefore warranted only if plain error occurred, and the error resulted in the conviction of an innocent defendant or "seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Carines*, 460 Mich at 763 (quotation marks, citation, and alteration omitted).

## III. DETERMINATE SENTENCING

McClain argues that his two-year determinate sentences for his felony-firearm convictions violated Michigan's constitutional provision for indeterminate sentences. We disagree.

Michigan's felony-firearm statute provides that "[a] person who carries or has in his or her possession a firearm when he or she commits or attempts to commit a felony . . . is guilty of a felony and shall be punished by imprisonment for 2 years." MCL 750.227b(1). Pursuant to Const 1963, art 4, § 45, "[t]he legislature may provide for indeterminate sentences as punishment for crime and for the detention and release of persons imprisoned or detained under such sentences." McClain asserts that this provision authorizes our Legislature to enact only indeterminate sentences, and not determinate sentences like in the felony-firearm statute.

As McClain concedes, this Court has already considered and rejected this argument. In *People v Cooper*, 236 Mich App 643; 601 NW2d 409 (1999), this Court observed that the constitutional section "includes no *prohibition* against a statute *requiring* determinate sentencing as a punishment for crime," and that "an enacted state statute does *not* require express authorization by a provision of the Michigan Constitution." *Id*. at 661, 663 (emphasis in original.) "[A]n enacted statute in force regarding *any* subject or establishing *any* type of rule is valid as long as it does not contravene a provision of the Michigan Constitution or federal law." *Id*. at 663-664 (emphasis in original). Thus, the *Cooper* Court ruled that the determinate sentence in the felony-firearm statute, MCL 750.227b(1), is constitutional "because nothing in the Michigan Constitution or federal law prohibits the imposition of a determinate sentence as a punishment for a crime." *Cooper*, 236 Mich App at 664.

In arriving at the conclusion that Const 1963, art 4, § 45 does not prohibit a statute that includes a determinate sentence, the Court in *Cooper* examined the historical authority of the Legislature to enact determinate sentences. This history included cases from 1891 and 1904, examining the 1889 indeterminate-sentencing act, and provisions of the 1850, 1908, and present versions of our state Constitution. *Cooper*, 236 Mich App at 661-662. This Court ruled that the

drafters of Const 1963, art 4, § 45, and earlier constitutional provisions, "did not intend to bar determinate sentencing." *Cooper*, 236 Mich App at 662.

McClain does not dispute this analysis, nor does he identify any constitutional provisions expressly limiting the Legislature's authority. He instead asserts that "*Cooper* disrupts enough of Michigan's sentencing scheme, and conflicts with the plain text of Section 4, Article 45 of our Constitution, such that this Court should take another look at *Cooper*." McClain presents no legal authority that conflicts with the analysis in *Cooper*, but urges us to declare this case in conflict with *Cooper* so that a special panel might resolve the issue in his favor. See MCR 7.215(J)(2) to (7). We see no such conflict and no basis to rule that *Cooper* was incorrectly decided. For that reason, we must follow *Cooper* as binding precedent, see MCR 7.215(J)(1), and we reject McClain's challenge to his felony-firearm sentences.

## IV. RIGHT TO BEAR ARMS

McClain maintains that his felon-in-possession conviction violated his constitutional right to bear arms. Again, we disagree.

The Second Amendment of the United States Constitution states, in its entirety, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." The Michigan Constitution also provides, "Every person has a right to keep and bear arms for the defense of himself and the state." Const 1963, art 1, § 6. But those convicted of a felony, like McClain, "shall not possess, use, transport, sell, purchase, carry, ship, receive, or distribute a firearm" until the expiration of a specified time period and the satisfaction of specified conditions. MCL 750.224f(1) and (2).

McClain's argument that his conviction under MCL 750.224f contravened his constitutional right to "keep and bear arms" has also been considered and decided to the contrary. In *McDonald v Chicago*, 561 US 742, 786; 130 S Ct 3020; 177 L Ed 2d 894 (2010), the United States Supreme Court reiterated that, despite the Second Amendment guarantee of the right to bear arms and its application to the states through the Fourteenth Amendment, firearm possession may be regulated, including "longstanding regulatory measures" like prohibiting felons from possessing firearms. Our Court, in turn, has similarly held that the right to bear arms is subject to limitations, including "regulation of gun possession by felons." *People v Powell*, 303 Mich App 271, 273; 842 NW2d 538 (2013).

In *People v Deroche*, 299 Mich App 301, 307-308; 829 NW2d 891 (2013), this Court explained that prohibiting gun possession by certain "classes of persons" did not violate the Second Amendment because "the categories of presumptively lawful regulatory measures" included "restrictions preventing felons, the mentally ill, or illegal drug users from possessing firearms because they are viewed as at-risk people in society who should not bear arms." In *People v Swint*, 225 Mich App 353, 362-363; 572 NW2d 666 (1997), this Court ruled that the Michigan constitutional protection of a right to bear arms "does not guarantee defendant the right to possess a firearm after defendant is convicted of a felony" and that MCL 750.227f "represents a reasonable regulation by the state in the exercise of its police power to protect the health, safety, and welfare of Michigan citizens." Moreover, in *People v Green*, 228 Mich App 684, 692; 580 NW2d 444

(1998), this Court likewise concluded that the defendant's "right to bear arms under the Michigan Constitution was not violated by the felon-in-possession charge."

McClain argues that these holdings must be reconsidered under the "new framework" in the United States Supreme Court's opinion in *New York State Rifle & Pistol Ass'n, Inc v Bruen*, 597 US 1, 10-11; 142 S Ct 2111; 213 L Ed 2d 387 (2022). The *Bruen* Court ruled unconstitutional a New York regulatory scheme that required applicants for licenses to carry firearms in public to show "a special need for self-defense." *Id*. at 8-10. McClain emphasizes the *Bruen* Court's disapproval of a test federal appellate courts used in Second Amendment cases that first considered whether "the government may justify its regulation by establish[ing] that the challenged law regulates activity falling outside the scope of the right as originally understood," then, for cases not involving self-defense in the home and thus calling for intermediate scrutiny, "how close the law comes to the core of the Second Amendment right and the severity of the law's burden on that right." *Id*. at 18-20 (quotation marks and citations omitted). The *Bruen* Court criticized the use of the second step because pertinent precedent "does not support applying means-end scrutiny," *id*. at 19, and called for analysis "centered on constitutional text and history," *id*. at 22. Importantly, however, in *McDonald*, *Powell*, *Swint*, and *Green*, this Court did not use the disfavored test to uphold the constitutionality of MCL 750.227f.

The *Bruen* Court reaffirmed the approach it used in *District of Columbia v Heller*, 554 US 570; 128 S Ct 2783; 171 L Ed 2d 637 (2008), in which the Court held that a District of Columbia law banning handgun possession in the home, and its "prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense," violated the Second Amendment. *Id*. at 635. But, after a comprehensive discussion of the language and history of the Second Amendment, the Court in *Heller* also stated as follows:

> Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms. [*Id.* at 626-627.]

Thus, the case on which McClain relies—*Bruen*—endorses the analysis in *Heller* stating that a felon may be prohibited from possessing a firearm without violating the Constitution. *Bruen* does not contradict or call into doubt this Court's rulings that MCL 750.227f is a constitutionally permissible limitation on the right to bear arms. Accordingly, McClain is not entitled to relief on this issue.

## V. DOUBLE JEOPARDY

Finally, McClain asserts that his convictions of felony-firearm and felon-in-possession for the single use of a firearm violated constitutional double-jeopardy protections.

The United States Constitution protects a criminal defendant from being "subject for the same offence to be twice put in jeopardy . . . ." US Const Amend V. The Michigan Constitution provides a similar guarantee, Const 1963, art 1, § 15, which was intended to be construed

consistently with the Fifth Amendment. *People v Szalma*, 487 Mich 708, 715-716; 790 NW2d 662 (2010).

The test to determine if one transaction that violates two distinct statutory provisions constitutes one or two offenses is whether conviction under each statute requires proof of an element that the other does not. *Blockburger v United States*, 284 US 299, 304; 52 S Ct 180; 76 L Ed 306 (1932). However, "where, as here, the Legislature specifically authorizes cumulative punishment, the *Blockburger* test has no application." *People v Dillard*, 246 Mich App 163, 166 n 2; 631 NW2d 755 (2001).

In *Dillard*, this Court considered "whether there is a clear indication of legislative intent to impose multiple punishment for the same offense" by examining the language of the felony-firearm statute in light of the defendant's felon-in-possession conviction. *Id*. at 165-171. This Court recognized that the clear intent of the Legislature was that, with only four specified exceptions, " ' "every felony committed by a person possessing a firearm result in a felony-firearm conviction." ' " *Id*. at 167, quoting *People v Mitchell*, 456 Mich 693, 697; 575 NW2d 283 (1998), quoting *People v Morton*, 423 Mich 650, 656; 377 NW2d 798 (1985).

The *Dillard* Court observed that, in *Mitchell*, our Supreme Court ruled that the four exceptions explicitly stated in MCL 750.227b(1) were exclusive, and that " 'the Legislature's intent in drafting the felony-firearm statute was to provide for an additional felony charge and sentence whenever a person possessing a firearm committed a felony other than those four explicitly enumerated in the felony-firearm statute.' "[1] *Dillard*, 246 Mich App at 165, quoting *Mitchell*, 456 Mich at 698. This Court noted that felon-in-possession was not among the specific exceptions to the felonies upon which felony-firearm might be predicated, and therefore that "the Legislature clearly intended to permit a defendant charged with felon in possession to be properly charged with an additional felony-firearm count." *Dillard*, 246 Mich App at 167-168. Further, in *People v Calloway*, 469 Mich 448, 451-452; 671 NW2d 733 (2003), our Supreme Court held that sentences for both felony-firearm and felon-in-possession convictions do not violate the Double Jeopardy Clause in light of *Mitchell*, which *Dillard* followed.

When interpreting a statute, we glean the Legislature's intent from the plain language of the statute, as did the *Calloway* Court. See *People v Lively*, 470 Mich 248, 253; 680 NW2d 878 (2004). The meaning plainly expressed is presumed to be the intent of the Legislature. *People v Mattoon*, 271 Mich App 275, 278; 721 NW2d 269 (2006). Judicial construction is appropriate only when a statute is ambiguous. *People v Warren*, 462 Mich 415, 427; 615 NW2d 691 (2000). It would be improper for us to look beyond the plain language of the four exceptions specified in MCL 750.227b(1), especially in light of binding precedent.

Defendant argues that *Calloway* was wrongly decided and should be overruled. Defendant maintains that the Legislature could not have intended that possession by a felon would constitute a predicate felony for felony-firearm when the felon-firearm statute was enacted in 1976 and the

---

[1] The four exceptions are MCL 750.223 (unlawful sale of firearms), MCL 750.227 (carrying a concealed weapon), MCL 750.227a (unlawful possession of a firearm by a licensee), and MCL 750.230 (alteration of identifying marks on a firearm). *Dillard*, 246 Mich App at 168 n 3.

-5-

felon-in-possession statute was enacted in 1992. However, this Court specifically rejected this argument in *Dillard*, noting that the Legislature could indeed "have amended the felony-firearm statute to explicitly exclude the possibility of a conviction under the felony-firearm statute that was premised on MCL 750.224f," but did not. *Dillard*, 246 Mich App at 168. As stated, *Calloway* relied on *Dillard* and *Mitchell*.

Further, the *Michell* Court, after examining "the subject, language, and history" of the statute, concluded that the Legislature intended felony-firearm to be "an additional felony charge and sentence whenever a person possessing a firearm committed a felony" other than those explicitly exempted. *Mitchell*, 456 Mich at 696-698. *Mitchell* referred to the historical analysis provided in *Morton*, 423 Mich at 656, and *People v Sturgis*, 427 Mich 392, 407; 397 NW2d 783 (1986). *Mitchell*, 456 Mich at 697. *Sturgis* in particular analyzed the legislative history leading to the 1976 enactment of the felony-firearm statute, and concluded that it "reflects a commitment to reach all but the excepted felonies," *Sturgis*, 427 Mich at 407-408, and "evidences no indication of lenity on the part of the Legislature in respect to weapon offenses," *id.* at 408. Additionally, this Court in *Dillard* also ruled that the "two statutes have distinct purposes that address different social norms," and therefore "should be viewed as separate and amenable to permitting multiple punishments." *Dillard*, 246 Mich App at 168-171.

In *People v Monroe*, 509 Mich 1072; 975 NW2d 482 (2022), our Supreme Court heard oral arguments about whether to grant an application for leave to appeal that asked the Court to determine if *Calloway* was correctly decided and, if not, whether it "should nonetheless be retained under principles of stare decisis." The Court then denied the application because it was "not persuaded that the question presented should be reviewed . . . ." *People v Monroe*, 511 Mich 1117; 992 NW2d 663 (2023). In a concurrence, Justice WELCH urged the Legislature to "reconsider the current draconian status quo of allowing dual convictions for the single act of possessing a firearm," but opined that *Calloway* was decided correctly even though, with the felony-firearm statute's 1976 enactment, "the mere possession of a firearm was not intended to result in cumulative punishments like those received by [the] defendant in this case." *Monroe*, 511 Mich at 1118-1119 (WELCH, J., concurring). Justice WELCH, noting that "the legal landscape has changed considerably since 1976," reasoned as follows:

> The felon-in-possession statute, MCL 750.224f(1), was passed in 1992. The Legislature was thus aware of the then-existing felony-firearm statute and is presumed to have understood the consequences of not having contemporaneously amended the felony-firearm statute, MCL 750.227b(1), to add felon-in-possession as one of its exemptions. In 2015, the Legislature actually did amend MCL 750.227b(1) to incorporate some minor changes and still did not add felon-in-possession as an exemption. Thus, given the felony-firearm statute's explicit allowance for multiple punishments arising out of the same crime, it is difficult to conclude that the *Calloway* Court was mistaken. This position is only bolstered by the Legislature's 2015 amendments to the felony-firearm statute and its lack of action at that time to add the felon-in-possession statute as an exemption. [*Id*. at 1119-1120 (citations omitted).]

This reasoning is similar to that in *Dillard*, 246 Mich App at 168, and *Calloway*, 469 Mich at 451-452.

This Court is bound to follow the decisions of our Supreme Court. *People v Strickland*, 293 Mich App 393, 402; 810 NW2d 660 (2011). Further, this Court must follow its own published decisions issued on or after November 1, 1990, except decisions that have been reversed or otherwise modified by the Supreme Court or a special panel of this Court. MCR 7.215(J)(1). Because the Supreme Court in *Mitchell* and *Calloway*, and this Court in *Dillard*, have rejected this double-jeopardy challenge, we also reject the same challenge raised by McClain.

Affirmed.

/s/ Michael J. Riordan
/s/ Colleen A. O'Brien
/s/ Kristina Robinson Garrett